**In re Sidney GREENWALD d/b/a Maple Leaf Nursing Home, Debtor.**

**Sidney GREENWALD d/b/a Maple Leaf Nursing Home, debtor in possession, Plaintiff,**

v.

**David AXELROD, M.D., as Commissioner of the New York State Department of Health, et al., Defendants.**

**Bankruptcy No. 81 B 20402.**
**82 Adv. 6101.**

United States Bankruptcy Court,
S.D. New York.

Nov. 25, 1983.

Marvin L. Tenzer, P.C., New York City, for debtor.

Robert Abrams, Atty. Gen., New York City, for Com'r of N.Y. State Dept. of Health; Gerald Slotnik, Asst. Atty. Gen., New York City, of counsel.

DECISION ON APPLICATION FOR RELIEF FROM AUTOMATIC STAY.

HOWARD SCHWARTZBERG, Bankruptcy Judge.

The Commissioner of the New York State Department of Health ("Commissioner") seeks relief from the automatic stay that was imposed in this liquidating Chapter 11 case pursuant to 11 U.S.C. § 362(a) in order to complete administrative proceedings in regard to the debtor's medicaid reimbursement entitlements. The debtor opposes the Commissioner's application for relief and asserts that the police or governmental regulatory exception in 11 U.S.C. § 362(b)(4) is inapplicable to the audit hearing because the only interest of the state to be protected by the audit hearing is the state's pecuniary interests in its claim against the debtor for medicaid overpayments.

FACTS

1. The debtor, Sidney Greenwald d/b/a Maple Leaf Nursing Home, filed with this court its voluntary petition for relief under Chapter 11 of the Bankruptcy Code, 11 U.S.C. §§ 1101–1174, on July 1, 1981.

2. The debtor ceased rendering patient care in or about May, 1981. There is no longer a Maple Leaf Nursing Home. There

are no patients whose health and welfare would be affected by the outcome of the Commissioner's audit hearing.

3. The New York State Department of Health is charged with the responsibility for setting medicaid reimbursement rates for residential health care facilities such as the type formerly operated by the debtor.

4. Two audit appeals are at issue between the parties. The first audit involves a cost report for the years 1973–1974. The audit was conducted and a report was issued by the Office of the Special Prosecutor. The report was referred to the Department of Health for the purpose of an administrative appeal that was requested by the debtor. The bureau review that was sought by the debtor was completed in June, 1981. The debtor thereafter requested an administrative hearing. The hearing was originally scheduled to begin on December 1, 1982. However, the debtor's commencement of the Chapter 11 case on July 1, 1981 automatically stayed the hearing by reason of 11 U.S.C. § 362(a).

5. The second audit appeal pertains to the debtor's base year costs for the period 1975 through 1979. This audit was conducted by the Bureau of Audit and Investigation. An audit report was issued in November, 1982.

6. In September, 1983, the debtor was served with a Notice of Hearing concerning the second audit appeal. This Notice advised the debtor that this administrative hearing would be consolidated with the prior pending administrative hearing for the first audit appeal pertaining to the years 1973 and 1974. This consolidated hearing was scheduled to commence on November 1, 1973. The debtor objected to the consolidated audit hearing on the basis of the automatic stay provisions in 11 U.S.C. § 362(a).

7. The audits in question refer to cost disallowances for the debtor's base years from 1973 through 1979. The disallowances involve a downward revision and recomputation of the medicaid reimbursement rates that were predicated on these base year costs. The first audit report involves a retroactive reduction in medicaid reimbursement totalling $83,549. The second audit report involves a retroactive reduction in medicaid reimbursement totalling approximately $828,000. Thus, the total medicaid reimbursement claimed by the Department of Health amounts to approximately $911,500.

8. The New York State Department of Health and related authorities have filed a proof of claim in this case for $911,500 with respect to the alleged medicaid overpayments to the debtor. However, the Commissioner maintains that the consolidated administrative audit hearing should be allowed to go forward because such a hearing may result in the resolution of at least some of the outstanding audit issues. Regarding any issues remaining in dispute at the conclusion of the administrative hearing process, the Commissioner argues that the court will have the benefit of a fully developed administrative record to assist in its review of the complex and technical medicaid reimbursement issues dealt with in the audit reports.

## DISCUSSION

The debtor's commencement of its Chapter 11 case on July 1, 1981 automatically invoked the stay imposed under 11 U.S.C. § 362(a)(1), which enjoined "the commencement or continuation ... of ... [an] administrative, or other proceeding against the debtor that was or could have been commenced before the commencement of the case ...." However, certain specified exceptions to the automatic stay are delineated in subsection (b) of 11 U.S.C. § 362. One of the exceptions is set forth in 11 U.S.C. § 362(b)(4) and pertains to "the commencement or continuation of an action or proceeding by a governmental unit to enforce such governmental unit's police or regulatory power."

It is now well-established that if the government action directed against the debtor relates mainly to the protection of a pecuniary interest rather than the enforcement of regulatory police powers for the

protection of the general public, the subsection (b)(4) exception will not apply and the action will be subject to the automatic stay. *See Missouri v. U.S. Bankruptcy Court,* 647 F.2d 768, 776 (8th Cir.1981), *cert. denied,* 454 U.S. 1162, 102 S.Ct. 1035, 71 L.Ed.2d 318 (1982); *Muzio v. Sampson,* 17 B.R. 528, 530 (Bkrtcy.D.Conn.1982); *Theobold Industries, Inc., v. Local 786, International Chemical Workers Union,* 16 B.R. 537, 539 (Bkrtcy.D. N.J.1981); *Pizza of Hawaii, Inc. v. Department of Taxation,* 12 B.R. 796, 799 (Bkrtcy. D.Hawaii 1981); *Joe DeLisi Fruit Co. v. Minnesota,* 11 B.R. 694, 696–97 (Bkrtcy.D. Minn.1981); *Schatzman v. Department of Health (In re King Memorial Hospital),* 4 B.R. 704, 707 (Bkrtcy.S.D.Fla.1980); 1 W. Norton, Bankruptcy Law and Practice § 20.17, at 103 (Supp.1983); *see also Eisenberg v. Mineola (In re IDH Realty Inc.),* 16 B.R. 55 (Bkrtcy.E.D.N.Y.1981) (mem.) (zoning regulation enforcement not exempt under section 362(b)(4) stay exception because loss of zoning rights "would effectuate an improper taking from the debtor's estate"); *Volkswagen of America, Inc. v. Dan Hixson Chevrolet Co.,* 12 B.R. 917, 921 (Bkrtcy.N.D. Tex.1981) (quasi-judicial agency action affecting "private rights" not excepted by section 362(b)(4)). This point is reflected in the legislative history, where Congressman Don Edwards, Chairman of a subcommittee of the Judiciary Committee considering the Bankruptcy Code, observed:

> This section [363(b)(4)] is intended to be given a narrow construction in order to permit governmental units to pursue actions to protect the public health and safety and not to apply to actions by a governmental unit to protect a pecuniary interest in property of the debtor or property of the estate.

124 Cong.Rec. H11092 (daily ed. Sept. 28, 1978), *reprinted in* 1978 U.S.Code Cong. & Ad.News 5787, 6436, 6444–45.

■ The Commissioner in the instant case seeks to establish that the debtor is liable for reimbursement of medicaid overpayments totalling approximately $911,500 in order to support his proof of claim for this amount. No public health and safety issue is at stake; the nursing home has been sold and there are no patients in need of protection. Manifestly, the Commissioner seeks to protect a pecuniary interest in property of the debtor to the extent of a claim for medicaid overpayments. Accordingly, the Commissioner may not proceed under the police or governmental regulatory exception in 11 U.S.C. § 362(b)(4).

■ Nevertheless, there remains for consideration the Commissioner's application for relief from the automatic stay. The Commissioner contends that a lifting of the stay is necessary for him to complete administrative proceedings regarding the debtor's two audit appeals. Although the New York State Department of Health has filed with the court a proof of claim for $911,500, it has not completed its administrative process, as required by state law, which would support a final determination as to the Commissioner's right to recoup this claimed medicaid overpayment. The two administrative appeals previously filed by the debtor remain pending and must be resolved. The debtor contends that in view of the fact that the Department of Health has filed its proof of claim in this case, no useful purpose can be served by lifting the stay.

This is not a case where the debtor's participation in an administrative proceeding will adversely affect a potential successful reorganization. The debtor's sole operating property, the Maple Leaf Nursing Home, has already been sold and the debtor is not actively engaged in business. The Chapter 11 case involves a complete liquidation. The pending administrative proceeding in which the debtor filed its appeals from the audit reports will not result in removing any property from this estate without further order from this court. The Commissioner will have to claim the alleged medicaid overpayments in question from the aegis of this court. Moreover, an administrative determination of these appeals will not adversely affect the progress of this case. The debtor has had the benefit of the automatic stay for nearly two and one-half years. Although the automatic

stay was intended to give a debtor a breathing spell after the commencement of a bankruptcy case, it was not structured to give the debtor a permanent shield against all litigation, especially when no business is affected and liquidation is the goal. This point was observed in the legislative history pertaining to 11 U.S.C. § 362(a), in pertinent part as follows:

*The stay is not permanent.* There is adequate provision for relief from the stay elsewhere in the section. However, it is important that the trustee have an opportunity to inventory the debtor's position before proceeding with the administration of the case. *Undoubtedly the court will lift the stay for proceedings before specialized or non-governmental tribunals to allow those proceedings to come to a conclusion.* Any party desiring to enforce an order in such a proceeding would thereafter have to come before the bankruptcy court to collect assets. Nevertheless, it will often be more appropriate to permit proceedings to continue in their place of origin, when no great prejudice to the bankruptcy estate would result, in order to leave the parties to their chosen forum and to relieve the bankruptcy court from many duties that may be handled elsewhere.

H.R.Rep. No. 595, 95th Cong., 1st Sess. 341 (1977); S.Rep. No. 989, 95th Cong., 2d Sess. 50 (1978) (emphasis added), U.S.Code Cong. & Admin.News 1978, 5787, 5836, 6297.

Accordingly, there is no meaningful reason why the parties should not bring the administrative appeals to a conclusion. Any enforcement of a determination in the administrative proceedings would have to be submitted to this court for scrutiny on the basis of a fully developed administrative record which will assist in such review.

## CONCLUSION OF LAW

The Commissioner's motion for relief from the automatic stay with respect to the administrative processing of the debtor's two pending appeals is granted.

SUBMIT ORDER on notice.