## CPI CRUDE, INC., Plaintiff,

v.

## UNITED STATES DEPARTMENT OF ENERGY, Defendant.

### Civ. A. No. 86–1943.

United States District Court,
District of Columbia.

Aug. 19, 1987.

Craig N. Goodrich, William J. Mutryn, Casson, Calligaro & Mutryn, Washington, D.C., for plaintiff.

Arthur S. Weissbrodt, John L. Gurney, U.S. Dept. of Energy, Economic Regulatory Admin., Office of the Solicitor, Washington, D.C., for defendant Dept. of Energy.

Joel M. Cockell, Federal Energy Regulatory Com'n, Washington, D.C., for defendant Federal Energy Regulatory Com'n.

## MEMORANDUM OPINION

BARRINGTON D. PARKER, Senior District Judge.

This case comes before the Court on the parties' cross-motions for summary judgment. Plaintiff, a reseller of crude petroleum products and lately the subject of certain involuntary bankruptcy proceedings, seeks an order from this Court enjoining defendant Department of Energy ("DOE") from enforcing a Remedial Order ("RO") designed to rectify certain alleged overpricing practices on the part of plaintiff. Plaintiff contends that the RO, which was the product of an administrative proceeding commenced during the pendency of the bankruptcy action, is void as violative of the automatic stay provision of the Bankruptcy Code, 11 U.S.C. § 362(a)(1). Defendant counters that the administrative proceeding came within an exception to the automatic stay provision, 11 U.S.C. § 362(b)(4), designed to allow the prosecution of certain regulatory actions. Insisting then, that the RO is valid, defendant seeks to enforce it in this Court by way of counterclaim.[*]

---

[*] The United States was granted leave to intervene as a party-defendant for the purpose of formally asserting the counterclaim.

The material facts are not in dispute. For that reason, and because the Court is persuaded that the DOE proceeding was not stayed by section 362(a)(1), the Court grants defendant's motion for summary judgment.

### Background

#### 1. The Bankruptcy Proceedings

Plaintiff is a Texas corporation with its principal place of business in Houston, Texas. On January 12, 1983, an alleged creditor of plaintiff instituted an involuntary petition in bankruptcy against plaintiff in the United States Bankruptcy Court for the Southern District of Texas. Shortly thereafter, plaintiff filed a motion to dismiss the petition. That motion was granted and became the subject of two separate appeals to the United States District Court for the Southern District of Texas.

The first appeal was taken by the plaintiff here for the purpose of obtaining a clarification as to whether the proceeding had been dismissed with or without prejudice. The district court remanded the matter for such a determination, and the bankruptcy court[1] ruled that the dismissal had been without prejudice.

The second appeal was taken by the petitioning creditor, which sought reversal of the order of dismissal. On November 27, 1985, that order was vacated and the case remanded for further proceedings. While plaintiff appealed that ruling, the appeal was dismissed as an appeal from a nonappealable order.

To date, nothing further has been done to prosecute that petition. More importantly, the docket sheet from the bankruptcy court indicates that on October 18, 1985, the bankruptcy court entered a final decree ordering that the case be closed. While this Court has received a copy of that order, it is unable to divine on what basis the bankruptcy court made that ruling. Nevertheless, plaintiff has failed to demonstrate that the proceeding in question remains open.

A second involuntary proceeding was commenced in 1983 and remained pending until March 11, 1986, when the bankruptcy court dismissed the petition. Plaintiff does not claim that that proceeding is still open.

In short, the record indicates that from 1983 until early 1986, plaintiff was the subject of certain actions in bankruptcy, but that no proceedings are currently pending against it.

#### 2. The DOE Proceedings

On February 28, 1985, concededly while the bankruptcy proceedings were pending, DOE, through its Economic Regulatory Administration ("ERA"), issued a Proposed Remedial Order ("PRO") charging plaintiff with having sold crude oil to retail customers at prices that exceeded maximum lawful prices established under the Emergency Petroleum Allocation Act ("EPAA"), 15 U.S.C. 751 *et seq.*, and implementing regulations, codified at 10 C.F.R. Part 212.[2] The PRO sought some $7.5 million in overcharges, plus interest, that accrued during the period from February 1976 through December 1978.

On March 20, 1985, plaintiff sought a stay of the PRO from the Office of Hearings and Appeals, on the grounds that the proceedings were violative of 11 U.S.C. § 362(a)(1), the automatic stay provision. That request was denied, and, after further proceedings, the RO was issued. On October 22, 1985, plaintiff appealed the issuance of the RO to the Federal Energy Regulatory Commission, again arguing that the administrative proceedings were stayed by section 362(a)(1). Plaintiff's appeal to the automatic stay provision was again held to be unavailing, and the RO was affirmed as issued in an order of May 7, 1986. Plaintiff now seeks judicial review of that order in the instant suit.[3]

---

1. The bankruptcy judge who issued the order of dismissal had since retired from the bench, and the subsequent clarification of that order was made by another judge.

2. The statutory and regulatory provisions in question are no longer in effect.

3. Throughout the various levels of review within the DOE, plaintiff has relied exclusively on its argument that all administrative proceedings

### Analysis

■ The Court's analysis must proceed from the premise that, if the DOE proceedings did violate the automatic stay provision of 11 U.S.C. § 362(a)(1), the resulting RO is void. *See National Labor Relations Board v. Edward Cooper Painting, Inc.,* 804 F.2d 934, 940 (6th Cir.1986); *Borg-Warner Acceptance Corp. v. Hall,* 685 F.2d 1306, 1308 (11th Cir.1982); *In re Coleman American Cos., Inc.,* 26 B.R. 825, 830–31 (Bankr.D.Kan.1983); 2 *Collier on Bankruptcy* ¶ 362.11 at 362–71 (15th ed. 1982 & Supp.1986). Conversely, if the proceedings properly came within the exception contained in section 362(b)(4), and in the absence of a currently pending bankruptcy petition, the RO remains valid and may be enforced in this Court. The key question is, then, whether the DOE proceedings were stayed by the pendency of the bankruptcy petitions, described *supra,* during 1985 and early 1986.

■ The Bankruptcy Code provides that a petition in bankruptcy operates as a stay, applicable to all entities, of—

> (1) the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title[.]

11 U.S.C. § 362(a)(1). The Code further provides such a petition will not act as a stay "under [section 362(a)(1) ], of the commencement or continuation of an action or proceeding by a governmental unit to enforce such governmental unit's police or regulatory power[.]" 11 U.S.C. § 362(b)(4). The question then arises of when the government, in this case the federal government acting through DOE, can be said to be exercising its "police or regulatory power."

Unfortunately, the legislative history appears to be somewhat contradictory on this point. In reporting on the 1978 amendments to the Code, of which the new section 362 was a part, Congressman Edwards of California stated that the exception contained in subsection (b)(4) was "to be given a narrow construction in order to permit governmental units to pursue actions to protect the public health and safety and not to apply to actions by a governmental unit to protect a pecuniary interest in property of the debtor or property of the estate." 124 Cong.Rec. 32,392, 32,395 (1978). The earlier published House Report, however, states that

> where a governmental unit is suing a debtor to prevent or stop violation of fraud, environmental protection, consumer protection, safety, or similar police or regulatory laws, or *attempting to fix damages* for violation of such a law, the action or proceeding is not stayed under the automatic stay.

H.R.Rep. No. 95–595, 95th Cong., 1st Sess. 343 (1977), U.S. Code Cong. & Admin.News 1978, pp. 5787, 6299 (emphasis added). The Report goes on to explain that subsection (b)(5), which applies to the enforcement of a prepetition judgment, allows a governmental entity, in the exercise of its police or regulatory powers, to have a money judgment entered against the debtor, but not enforced. *Id.* This language, together with that quoted above, suggests that the mere fact that the government may be seeking to recover a sum certain does not militate against a finding that it is proceeding in furtherance of its police or regulatory powers. Yet that proposition seems somewhat hard to square with the "pecuniary interest" limitation suggested by Rep. Edwards. Indeed, in construing the automatic stay provision and its exceptions, courts have reached conflicting decisions, apparently as a result of this confusion.

A number of courts, in various factual settings, have stayed efforts undertaken by state agencies aimed at regulating the affairs of the debtor, finding that the interest claimed by the state was only of a pecuniary, not regulatory, nature. *See,*

must be stayed under section 362(a)(1). As a result, in part because it felt unable to do so,

plaintiff has failed to address the merits of the RO.

*e.g., In re Ellis,* 66 B.R. 821, 825–28 (N.D. Ill.1986); *In re Island Club Marina, Ltd.,* 38 B.R. 847, 853–54 (Bankr.N.D.Ill.1984); *In re Erlin Manor Nursing Home, Inc.,* 36 B.R. 672, 677–78 (Bankr.D.Mass.1984); *In re Aegean Fare Inc.,* 35 B.R. 923, 927–28 (Bank.D.Mass.1983); *cf. State of Missouri v. U.S. Bankruptcy Court,* 647 F.2d 768, 775–77 (8th Cir.1981), *cert. denied,* 454 U.S. 1162, 102 S.Ct. 1035, 71 L.Ed.2d 318 (1982) (action by state would have interfered with bankruptcy court's jurisdiction over debtors' assets). Courts have also stayed claimed regulatory efforts of the federal government, *see, e.g., In re Wellham,* 53 B.R. 195, 197–98 (Bankr.M.D. Tenn.1985), or have otherwise held that the automatic stay provision was at least applicable. *See, e.g., In re Greenwald,* 34 B.R. 954, 957 (Bankr. S.D.N.Y.1983) (stay lifted under court's discretionary power). Once one looks at the cases decided in connection with the regulatory proceedings authorized under the EPAA, however, the reported decisions show a divergence of rationale that underscores the confusion involved in applying a "pecuniary interest" test. Compare *In re Compton Corp.,* 40 B.R. 880, 882 (Bankr.N.D.Tex.1984), *appeal filed,* No. 7-84-92 (N.D.Tex. Jul. 5, 1984), with *In re County Fuel Co.,* 29 B.R. 534, 535–36 (Bankr.D.Md.1983), and *In re Vantage Petroleum,* 25 B.R. 471, 475 & n. 9 (Bankr.E. D.N.Y.1982). In the former case, the court, applying the "pecuniary interest" criterion, found that since the regulatory regime under which the overcharge liability was assessed had been repealed,[4] the government could not be asserting its police powers, and so must be held to be merely protecting some "pecuniary interest." The courts in the second two cases rejected that rationale and found that, despite the fact that the price control regulations were not being currently enforced, the government could assess overcharge liability in furtherance of its mandate to complete actions required by the former regulatory scheme, as long as it did not seek to actually enforce a money judgment in the face of pending bankruptcy proceedings. *See also In re D.M. Barber,* 13 B.R.

962, 963–64 (Bankr.N.D.Tex.1981) (NLRB can fix amount of liability for statutory violations).

This Court is of the view that cases such as *Vantage* and *County Fuel* better state the law, both as it was intended by Congress and as it is informed by sound policy considerations. While it is true that the assessment by the government of a debtor's liability for violations of law may look like the "protection of a pecuniary interest," such a reading of section 362(b)(4) and of that provision's legislative history would render the exception unworkable. It is generally the case that the government regulates private conduct by establishing penalties for certain violations of rules it prescribes. This does not mean that when it seeks to enforce the regulatory scheme in question, it is merely seeking to protect some "pecuniary interest" in the monies represented by the penalties or damages levied. To hold otherwise would be to read subsection (b)(5) out of the statute, at least to the extent that it "permit[s] the entry of a money judgment" against the debtor. H.R.Rep. No. 95–595, 95th Cong., 1st Sess. 343 (1977), U.S.Code Cong. & Admin.News 1978, p. 6299. Under the "pecuniary interest" test as it seems to be applied, a money judgment could *never* be entered against a debtor, for it would necessarily represent only a "pecuniary interest" in the property of the debtor, thus triggering the automatic stay. If it is necessary to give meaning to Rep. Edwards's suggesting that section 362(b)(4) does not give relief from a stay where the government seeks to protect a pecuniary interest, one can conceive of situations in which the government might be seeking to perfect an interest in the debtor's property for its own account. *See, e.g., In re Coleman American Cos. Inc.,* 26 B.R. 825 (Bankr.D.Kan.1983) (post-petition IRS assessments void as violative of stay).

Furthermore, not only does the above construction of section 362(b)(4) accord with legislative intent and plain common sense, but it also does not give rise to the

**4.** *See supra* note 2.

evils that are ordinarily associated with actions that proceed in the face of petitions in bankruptcy. In other words, the assessment of the amount of money owed for violation of a given statutory provision, if it is not to be immediately enforced, will do little to interfere with the orderly resolution of the debtor's legitimate financial concerns. And while the debtor might prefer not to expend the effort required to defend itself in administrative proceedings, such as the ones in question here, the Bankruptcy Code was never intended to give safe harbor to persons who have violated the law. *See Greenwald,* 34 B.R. at 957–58; *County Fuel,* 29 B.R. at 536.

In short, the Court is persuaded that the administrative proceedings giving rise to the RO at issue here did not violate the automatic stay provision of 11 U.S.C. § 362(a)(1) and that the RO is therefore valid and enforceable.

Accordingly, the Court grants defendant's motion for summary judgment and denies plaintiff's motion.

An appropriate Order shall be entered herewith.