**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**CONTINENTAL HAGEN CORPORATION, Respondent.**

**No. 89–70525.**

United States Court of Appeals, Ninth Circuit.

Submitted April 4, 1991.*

Decided May 10, 1991.

---

* The panel finds this case appropriate for submission without oral argument pursuant to Ninth

Circuit Rule 34–4 and Fed.R.App.P. 34(a).

John D. Burgoyne, Associate Gen. Counsel, Aileen A. Armstrong, Deputy Associate Gen. Counsel, N.L.R.B., Washington, D.C., for petitioner.

Lewis R. Landau, Sulmeyer, Kupetz, Baumann & Rothman, Los Angeles, Cal., for respondent.

Before SCHROEDER and REINHARDT, Circuit Judges, and KING,** Senior District Court Judge.

REINHARDT, Circuit Judge:

The National Labor Relations Board (NLRB) issued a Decision and Order against Continental Hagen Corporation (Continental) after finding that the corporation engaged in unfair labor practices relating to the closure of a plant. The NLRB petitions this court for enforcement of its Order pursuant to 29 U.S.C. § 160(e).[1] Continental, however, challenges our ability to enforce the Order, arguing that all proceedings are automatically stayed because of pending bankruptcy proceedings. We reject Continental's arguments and enforce the NLRB Order in part.

## FACTS

Continental was engaged in the sale and installation of steel rebar, in Burbank, California. The truckdrivers and employees of Continental belong to the Building Material and Dump Truck Drivers Local Union 420, International Union of Teamsters, Chauffers, Warehousemen and Helpers of America, AFL–CIO (the "Union").

The NLRB filed an unfair labor practice complaint against Continental, alleging that in March 1989, Continental had closed its Burbank operations and terminated its employees without bargaining with the Union, a violation of Section 8(a)(5) of the National Labor Relations Act, 29 U.S.C. § 158(a)(5). The NLRB's complaint also instructed that pursuant to NLRB rules, Continental must file an answer to the complaint within 14 days of service, or the allegations would be deemed admitted.

Continental did not file an answer or otherwise respond to the NLRB complaint, and denies having received the complaint. However, the NLRB sent the complaint by certified mail and possesses receipts from Continental.

On June 1, 1989, the NLRB sent a letter by certified mail informing Continental that an answer must be filed and that failure to respond by June 12, 1989 would result in a motion for summary judgment. The NLRB also possesses a signed receipt from Continental regarding this communication.

Continental failed to respond and the NLRB filed a motion for summary judgment on June 15, 1989. A notice was sent to Continental by certified mail regarding this motion, but the NLRB does not have this receipt.

Continental filed a petition for bankruptcy under Title 11 on June 9, 1989. On June 21, 1989, the NLRB transferred the unfair labor practice case to the Board from the regional office where it had been pending, and notified Continental, again by certified mail, allowing it 14 days to respond and show cause as to why the motion for summary judgment should not be granted. Again, Continental failed to respond, al-

---

** Honorable Samuel P. King, Senior United States District Court Judge for the District of Hawaii, sitting by designation.

1. 29 U.S.C. § 160(e) provides: "The Board shall have power to petition any court of appeals of the United States ... for the enforcement of such order and for appropriate temporary relief or restraining order, and shall file in the court the record in the proceedings, as provided in section 2122 of Title 28 ... The findings of the Board with respect to questions of fact if supported by substantial evidence on the record considered as a whole shall be conclusive."

though the NLRB possesses signed copies showing Continental's receipt of this notice.

On August 31, 1989, the NLRB granted the summary judgment motion and issued a Decision and Order against Continental. The NLRB found that Continental had engaged in unfair labor practices in closing the Burbank facility without bargaining with the Union, in violation of the National Labor Relations Act, 29 U.S.C. § 158.

The pertinent parts of the Order also provided that:

1) Continental must cease and desist from its unfair labor practices and Section 7 violations.

2) Continental must pay backpay to its employees at the rate of their normal wages when last employed from 5 days after the date of the Order unless the Union failed to request bargaining within 5 days of the Order.

3) Continental must mail copies of an attached notice to the Union and to its former employees.

4) Continental must post a notice regarding the Order. (NLRB Order, 296 NLRB 55)

The Order was sent by certified mail on Friday, September 1, 1989 to Continental and the Union. The NLRB has a signed receipt acknowledging receipt by Continental on September 15, 1989. The Union requested bargaining with Continental by a letter dated September 8, 1989. Continental's Burbank facility is presently closed and in the possession of another owner.

## DISCUSSION

The NLRB requests entry of a judgment enforcing its Order pursuant to 29 U.S.C. § 160(e). Continental contends that (1) the NLRB lacked jurisdiction to enter the Order; (2) the backpay provision is unenforceable because the Union failed to make a timely request for bargaining; (3) judicial enforcement of the NLRB Order providing

for backpay is barred because it would violate the automatic stay imposed by 11 U.S.C. § 362(a) of the Bankruptcy Code; and (4) enforcement of the NLRB Order at this time is moot and/or premature.

### I.

Continental claims that the NLRB lacked jurisdiction because Continental never received proper notice of the initiation of the NLRB proceedings against it or copies of the NLRB decision and order. However, the NLRB has evidence of signed certified mail receipts showing that Continental timely received notice of the proceedings against it. Continental failed to respond or file an answer. Thus, the NLRB had jurisdiction to grant summary judgment against Continental.

### II.

Continental also claims that the backpay provision of the NLRB Order is unenforceable because the Union failed to request bargaining within five days of the Order issued August 31, 1989. We reject this claim.

The NLRB Order was issued on Thursday, August 31, 1989. Pursuant to NLRB Rules and Regulations, § 102.111, the five day period provided for in the Order began the following day, Friday, September 1, 1989. Application of the NLRB Rules exempted Saturday, September 2, 1989; Sunday, September 3, 1989; and Labor Day, Monday, September 4, 1989, from the five day period. Therefore, the Union had until Friday, September 8, 1989 to request bargaining with Continental.

Continental's own records indicate a letter was mailed by the Union's attorney, Florence Hoffman, on September 8, 1989. Thus, the Union's request for Continental to engage in bargaining regarding the plant closure was timely and does not bar the enforcement of the backpay provisions mandated by the NLRB Order.

### III.

Continental argues that we lack jurisdiction to enforce the NLRB Order, due

to the automatic stay imposed when Continental filed for bankruptcy. The NLRB responds that its Order may be enforced because (1) the NLRB falls within the governmental police or regulatory unit exception to the automatic stay, *see* 11 U.S.C. §§ 362(b)(4) and (b)(5), and (2) it is not arguing for actual "enforcement" of the backpay provision, which is the key point of contention, but instead for an "entry" of judgment pursuant to the enforcement provision of § 160(e). We find the NLRB's position to be well supported by case law and hold that the NLRB Order is exempt from the automatic stay provision and may be enforced.

When a petition is filed for bankruptcy reorganization under Title 11, § 362(a) generally functions as a stay to all other proceedings against the debtor. Section 362(a) provides that a bankruptcy petition:

> "[O]perates as a stay, applicable to all entities, of—
>
> (1) the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other proceeding against the debtor ...
>
> (2) the enforcement, against the debtor or against property of the estate ...
>
> (3) any act to obtain possession of property of the estate or of property from the estate ...

However, 11 U.S.C. § 362(b) provides for exceptions in which such a petition does not operate as a stay:

> (4) under subsection (a)(1) of this section of the commencement or continuation of an action or proceeding by a governmental unit to enforce such governmental unit's police or regulatory power;
>
> (5) under subsection (a)(2) of this section, of the enforcement of a judgment, other than a money judgment, obtained in an action or proceeding by a governmental unit to enforce such governmental unit's police or regulatory power; ....

The legislative history behind § 362(b) helps to define its application:

> Paragraph (4) excepts commencement or continuation of actions and proceedings by governmental units to enforce police or regulatory powers. Thus, where a

governmental unit is suing a debtor to prevent or stop violation or fraud, environmental protection, consumer protection, safety, or similar police or regulatory laws, or attempting to fix damages for violation of such a law, the action or proceeding is not stayed under the automatic stay.

> Paragraph (5) makes clear that the exception extends to permit an injunction and enforcement of an injunction, and *to permit the entry of a money judgment, but does not extend to permit enforcement of a money judgment.* Since the assets of the debtor are in the possession and control of the bankruptcy court, and since they constitute a fund out of which all creditors are entitled to share, enforcement by a governmental unit of a money judgment would give it preferential treatment to the detriment of all other creditors."

*NLRB v. Edward Cooper Painting, Inc.,* 804 F.2d 934, 940 & n. 3 (6th Cir.1986) (citing H.R.Rep. No. 595, 95th Cong., 2d Sess. 343, *reprinted in* 1978 U.S.Code Cong. and Admin.News 5787, 5963, 6299) (emphasis added).

Section 362(b)(4) operates to exempt a governmental unit in its enforcement of a police or regulatory power, while section 362(b)(5) exempts a governmental unit's actions to seek entry of a money judgment (but not enforcement of a money judgment) in the enforcement of its police or regulatory power. Therefore, for the NLRB's Order to fall under a stay exception, the NLRB must qualify as a governmental unit that is exercising a police or regulatory power.

There is widespread agreement among the circuits that the National Labor Relations Board and other Congressionally established administrative agencies fall within the category of a governmental unit. *See NLRB v. P*I*E Nationwide, Inc.,* 923 F.2d 506, 512 (7th Cir.1991) ("[i]t is beyond dispute that the Board is a governmental unit"); *NLRB v. Edward Cooper Painting, Inc.,* 804 F.2d 934 (6th Cir.1986); *NLRB v. Evans Plumbing Co.,* 639 F.2d 291, 293 (5th Cir.1981) ("[i]t is clear that

the NLRB is a governmental unit"); *In re Bel Air Chateau Hospital, Inc.*, 611 F.2d 1248, 1250–51 (9th Cir.1979) (NLRB action is governmental regulatory proceeding).

Circuit decisions also hold that Board actions under the National Labor Relations Act qualify as police or regulatory actions. *P\*I\*E Nationwide*, 923 F.2d at 512 ("the [National Labor Relations] Act empowers the Board 'to prevent any person from engaging in any unfair labor practice ... affecting commerce'—a clear indication that the Board is enforcing a police or regulatory power"); *Edward Cooper Painting*, 804 F.2d at 940; *Ahrens Aircraft, Inc. v. NLRB*, 703 F.2d 23, 24 (1st Cir.1983); *NLRB v. Evans Plumbing Co.*, 639 F.2d 291, 293 (5th Cir.1981) (exercise of police or regulatory powers). These courts have interpreted § 362 and held that the filing of a bankruptcy petition does not operate to stay unfair labor practice proceedings of the NLRB. *See also In re Bel Air Chateau Hospital*, 611 F.2d 1248, 1250–51 (9th Cir.1979); *In re Rath Packing Co.*, 38 B.R. 552 (Bkrtcy.N.D.Iowa 1984); *In re Powell*, 27 B.R. 146 (Bkrtcy.W.D.Mo. 1983); *In re Career Consultants, Inc.*, 84 B.R. 419, 422 (Bkrtcy.E.D.Va.1988) (exempting order of Secretary of Labor from stay).[2]

Some courts have employed one of two tests to determine whether the governmental proceeding is exempt from the bankruptcy stay. In the "pecuniary purpose test," the court determines whether the action relates "primarily to the protection of the [government's] pecuniary interest in the debtors' property [or] to matters of public safety and health." *Edward Coo-*

*per Painting*, 804 F.2d at 942 (citing *In re State of Missouri*, 647 F.2d 768, 776 (8th Cir.1981), *cert. denied*, 454 U.S. 1162, 102 S.Ct. 1035, 71 L.Ed.2d 318 (1982)). The former purpose would be subject to the stay provision while the latter would not.

The public policy test "distinguishes between proceedings that effectuate public policy and those that adjudicate private rights: only the former are exempted from the automatic stay." *Id.*

NLRB actions have been exempted from the automatic stay under both analyses. First, the NLRB action is designed to prevent employers from violating federal labor law. "It is not a proceeding for the primary purpose of protecting the government's claim of entitlement to a pecuniary interest in the debtor's estate." *Id.; cf. In re Hughes*, 87 B.R. 49, 51 (Bkrtcy.S.D. Ohio 1988) (state regulatory suit for odometer tampering held not to be merely seeking to protect some "pecuniary interest"); *United States v. Nicolet, Inc.*, 857 F.2d 202 (3d Cir.1988) (holding that in a CERCLA suit the U.S. is not seeking to redress private wrongs nor suing as a "consuming participant in the national economy," but acting under explicit Congressional authorization to hold violating parties accountable). Moreover, the Supreme Court has declared that Congress has explicitly chosen the NLRB as "its agent" to enforce the National Labor Relations Act. *Nathanson v. NLRB*, 344 U.S. 25, 30, 73 S.Ct. 80, 83, 97 L.Ed. 23 (1952).[3]

NLRB actions have also passed the public policy test. As stated by the court in *In re Adams Delivery Service*:

Circuit, "Congress recognized, however, that the stay provision was particularly vulnerable to abuse by debtors improperly seeking refuge under the stay in an effort to frustrate necessary governmental functions." *United States v. Nicolet, Inc.*, 857 F.2d 202 (3d Cir.1988).

---

**2.** *In re Theobald Industries, Inc.*, 16 B.R. 537, 539 (Bkrtcy.N.J.1981) is a rare case where the NLRB proceedings were stayed. However, the bankruptcy court based the stay under the injunction of 11 U.S.C. § 105, rather than § 362. In addition, according to *In re Career Consultants, Inc.*, 84 B.R. 419, 422 (Bkrtcy.E.D.Va 1988), the same judge who decided *Theobald* later ruled that NLRB actions were not affected by the automatic stay. *See In re Nicholas, Inc.*, 55 B.R. 212, 214 (Bkrtcy.D.N.J.1985) (proceedings fell within the exception to the automatic stay).

Courts have also been wary of the filing of bankruptcy proceedings. As stated by the Third

**3.** The *Nathanson* Court also held that a bankruptcy court should defer the liquidation of a backpay claim to the NLRB: "And where the matter in controversy has been entrusted by Congress to an administrative agency, the bankruptcy court should normally stay its hand pending an administrative decision." *Id.*

[N]o private action arises under the Labor Act. Thus the NLRB is not functionally a forum where private parties may present labor disputes. Rather the NLRB determines which complaints it will act upon in its own name in furthering the policies of the federal labor laws.

In re Adams Delivery Service, 24 B.R. 589, 592 (Bkrtcy.App. 9th Cir.1982); see also NLRB v. Industrial Union of Marine and Shipbuilding Wkrs. of America, 391 U.S. 418, 88 S.Ct. 1717, 1721, 20 L.Ed.2d 706 (1968) ("[a] proceeding by the Board is not to adjudicate private rights but to effectuate a public policy"); Edward Cooper Painting, 804 F.2d at 942–43.

█ From the above analysis, it is clear that NLRB actions are generally not affected by the automatic bankruptcy stay. However, Continental argues that even if the NLRB's actions generally fall within an exception to the stay, enforcement of the NLRB's *backpay provision* would violate the terms of the exception. Specifically, Continental argues that enforcement of a *backpay provision* would jeopardize and interfere with a pending bankruptcy proceeding. We reject this argument.

Circuit and bankruptcy courts have drawn a distinction between the use of the terms "entry" and "enforcement" with regard to 11 U.S.C. § 362(b)(5). As stated by the Third Circuit:

In common understanding, a money judgment is an order entered by the court or by the clerk, after a verdict has been rendered for plaintiff, which adjudges that the defendant shall pay a sum of money to the plaintiff.... As the legislative history explicitly notes, the mere *entry* of a money judgment by a governmental unit is not affected by the automatic stay, provided of course that such proceedings are related to that government's police or regulatory powers.

Quite separate from the entry of a money judgment, however, is a proceeding to *enforce* that money judgment. The paradigm for such a proceeding is when, having obtained a judgment for a sum certain, a plaintiff attempts to seize property of the defendant in order to satisfy that judgment. It is this seizure of a defendant-debtor's property, to satisfy the judgment obtained by a plaintiff-creditor, which is proscribed by subsection 362(b)(5).

Penn Terra Ltd. v. Dept. of Environ. Resources, 733 F.2d 267, 275 (3d Cir.1984) (emphasis in original).

Other cases have followed this rationale. In NLRB v. P\*I\*E Nationwide, Inc., 923 F.2d 506, 512 (7th Cir.1991), the Seventh Circuit held that the NLRB did not "run afoul of § 362(b)(5) by attempting to reduce a claim to judgment: the Board is merely seeking entry of judgment and is not trying to seize P\*I\*E's property to satisfy a money judgment." The court specifically noted that the NLRB acknowledged that "it cannot enforce any judgment through the normal legal processes and recognizes that its only remedy for collection is through the bankruptcy court." Id. at 512.

Similarly, in Edward Cooper Painting, the Sixth Circuit stated that "once proceedings are excepted from the stay by section 362(b)(4), courts have allowed governmental units to fix the amount of penalties, up to and including *entry* of a money judgment." NLRB v. Edward Cooper Painting, 804 F.2d 934, 942–43 (6th Cir.1986) (citing In re Herr, 28 B.R. 465, 469 (Bkrtcy. D.Me.1983)). The court then held that the entry of a money judgment was permissible, but that enforcement was not. Id. at 943; see also United States v. Nicolet, 857 F.2d 202, 208–09 (3d Cir.1988) (holding entry permissible in a CERCLA suit); In re Compton Corp., 90 B.R. 798, 804–05 (N.D. Tex.1988) (in suit brought by Department of Energy, court stated that "*obtaining* a money judgment and *enforcing* it are conceptually quite distinct" in holding that DOE's claim could be liquidated, but enforcement would come later (emphasis in original)); Commodity Futures Trading Comm'n v. Co Petro Mktg., 700 F.2d 1279 (9th Cir.1983) (quoting Congressional language allowing entry of money judgment and holding that the Commodity Futures

Trading Commission is a police or regulatory power that is exempt from the stay).

We agree with the reasoning of the courts which have drawn a distinction between the entry of judgment and the enforcement of judgment with respect to a backpay provision. We further agree that § 362(b) permits us to enforce the NLRB backpay provision by an entry of judgment.

■ In the case at bar, the NLRB has stated:

> The Board recognizes that, because [Continental] is in bankruptcy, the Board cannot "collect" the monies owed under its order through the normal legal processes and that its only remedy is through the Bankruptcy Court; for that reason, the Board has filed an appropriate proof of claim with the Bankruptcy Court covering the sums involved herein.

The NLRB's understanding is correct. Our action in this case, entering judgment in favor of the NLRB with respect to the backpay provision, does not negate the fact that actual enforcement of the backpay provision must take place through the Bankruptcy Court.

## IV.

Continental asserts that enforcement of the NLRB Order at this time is moot and/or premature. First, Continental says that it "ha[s] complied with all provisions of the Order except the posting of a notice which recites that respondent shall pay backpay to the terminated employees." It claims that posting such a notice on a closed establishment in the possession of another owner would be impossible. Continental also states that although it has been in contact with the Union, bargaining has not occurred as of this date, making enforcement of the backpay provision premature. Finally, it asserts that enforcement of the Order at this time would be premature because of the pending bankruptcy proceedings.

■ Continental's claim that it cannot comply with the Order's provision requiring a notice to be posted on the premises has merit. The premises are now in the possession of another party, and Continental has no means of posting the notice. Thus, intervening events render that provision of the Order moot.

■ Next, we turn to the as-yet unheld bargaining sessions. Continental's claim that enforcement of the backpay provision is premature presumably rests on the assumption that, because bargaining has not yet resulted in a definite amount of backpay, we cannot enter judgment in favor of the NLRB regarding the payment of backpay. That argument is meritless. Our entry of judgment supports the NLRB's right to enforce the payment of a yet-undetermined amount of backpay, that amount to be determined through bargaining. By enforcing the NLRB Order, we further order that bargaining take place, thus permitting the ascertainment of a definite amount of backpay for the Bankruptcy Court to consider.

■ Finally, we have discussed above the reasons supporting our enforcement of the Order in the face of pending bankruptcy proceedings. Our enforcement of the Order will not interfere in any way with the bankruptcy proceedings and therefore is not premature.

We enforce the NLRB's Order, with the exception of the moot posting provision. Although we enter judgment in favor of the NLRB regarding the backpay provision, further enforcement of that provision must take place in the Bankruptcy Court.

ENFORCED IN PART.