In re **CONTEMPRI HOMES, INC., Debtor.**

**Official Committee of Unsecured Creditors of Contempri Homes, Inc. On Behalf of the Ch. 11 Estate of Contempri Homes, Inc., Plaintiff,**

v.

**Seven D. Wholesale and Seven D. Wholesale, Inc., Defendants.**

Bankruptcy No. 5–97–00496.
Adversary No. 5–98–00286A.

United States Bankruptcy Court,
M.D. Pennsylvania,
Wilkes–Barre Division.

March 13, 2002.

William Burnett, Earl Forte, Blank, Rome, Comisky & McCauley, Philadelphia, PA, for plaintiff.

Eugene C. Kelley, Hoegen, Hoegen & Kelley, Wilkes–Barre, PA, for defendants.

## *OPINION*[1]

JOHN J. THOMAS, Bankruptcy Judge.

The above-captioned Plaintiff has filed a Motion for Reconsideration of an Opinion and Order dated October 17, 2001, which granted judgment in favor of the Plaintiff and against the Defendants in the total amount of $59,526.73, said amount representing the total of preferential payments not falling within the exceptions provided by 11 U.S.C. § 547(c), and post-petition avoided transfers under 11 U.S.C. § 549. In short, the Plaintiff seeks to amend the Opinion and Order to correct what it says is a clear error of law in the misapplication of the approach adopted by this Court leading to an incorrect calculation of the amount of preferential transfers.[2] The Plaintiff asserts that the recalculation of the money judgment utilizing the *In re Thomas W. Garland, Inc.* approach should result in a judgment to the Plaintiff in the amount of $120,421.55. This total is arrived at by adding, in Plaintiff's view, the amount of pre-petition avoidable preferential transfers ($105,568.57) to the post-petition transfers amounting to $14,834.98. (The post-petition portion is not challenged by this Motion for Reconsideration.) The Plaintiff also requests the Court, consistent with its wherefore clause in the underlying Complaint, amend the judgment to provide for pre-judgment interest accruing from November 6, 1998, the filing date of the original Complaint underlying this matter, and post-judgment interest to ac-

crue until the judgment is paid in full by the Defendants.

In response, the Defendants assert the Court's calculations of the amounts of set-off and the post-petition transfer amounts are correct. Nevertheless, Defendants submit by way of a Cross–Motion for Reconsideration that the Court made an error when it found the Defendants produced insufficient evidence of ordinary business terms to establish a § 547(c)(2) exception.

■■■ For the reasons set forth herein, the Court will grant the Plaintiff's Motion for Reconsideration resulting in a recalculation upward of the amount of the judgment together with the granting of interest on the judgment beginning from the date of the filing of the underlying adversary Complaint. Furthermore, the Court will deny, in its entirety, the Cross–Motion for Reconsideration filed by the Defendants.

A motion to reconsider is appropriate when the court has obviously misapprehended a party's position or the facts or applicable law, or when the party produces new evidence that could not have been obtained through the exercise of due diligence. *Anderson v. United Auto Workers*, 738 F.Supp. 441, 442 (D.Kan. 1990); *Taliaferro v. City of Kansas City*, 128 F.R.D. 675, 677 (D.Kan.1989). An improper use of the motion to reconsider "can waste judicial resources and obstruct the efficient administration of justice." *United States ex rel. Houck v. Folding Carton Administration Committee*, 121 F.R.D. 69, 71 (N.D.Ill.1988).

---

**1.** Drafted with the assistance of Richard P. Rogers, Law Clerk.

**2.** The Court adopted the approach articulated in *In re Thomas W. Garland, Inc.*, 19 B.R. 920

(Bankr.E.D.Mo.1982), when calculating how subsequent advances of new value may be used to offset prior preferences.

Thus, a party who fails to present his strongest case in the first instance generally has no right to raise new theories or arguments in a motion to reconsider. *Renfro v. City of Emporia*, 732 F.Supp. 1116, 1117 (D.Kan.1990); *Butler v. Sentry Insurance*, 640 F.Supp. 806, 812 (N.D.Ill.1986).

*Fidelity State Bank v. Oles*, 130 B.R. 578 (D.Kan.1991).

Additionally, "A Rule 59(e) motion is available to correct a broad range of alleged errors, including a 'relitigat[ion] [of] the original issue,' *Smith v. Evans*, 853 F.2d 155, 158 (3d Cir.1988) or a correction of 'judicial errors,' otherwise confined to appeals. *Campfire Shop*, 71 B.R. at 524." *In re Tuan Tan Dinh*, 90 B.R. 743 (Bankr. E.D.Pa.1988) *citing* at page 745, *Smith v. Evans*, 853 F.2d 155, 158 (3d Cir.1988), and *In Re Campfire Shop, Inc.*, 71 B.R. 521, 523–24 (Bankr.E.D.Pa.1987).

The Court will initially address the assertion that under the *Garland* approach, it miscalculated the amount of new value to offset preferential transfers.

For the sake of brevity, the Court will not restate how it performed its original calculations. The parties' attention is drawn to the Opinion dated October 17, 2001, a copy of which is attached hereto for their reference. The Court will note that it relied primarily on Exhibits D–3 and D–4 in making its calculations. Attached as Exhibit B to the Plaintiff's Supplement to the Motion for Reconsideration is a detailed chart which appears to re-list the new value invoices contained on Defendants' original Exhibits D–3 and D–4. While the written analysis of the charts as provided in the Plaintiff's Memorandum in Support for the Motion for Reconsideration is somewhat inarticulate, the Plaintiff's position is that certain invoices indicating delivery dates of goods as "unknown", as listed in Defendants' Exhibits D–3 and D–4, should not have been calculated as new value setting off prior preferential transfers. These invoices total $42,783.42.

Keeping in mind that the burden of proof on the exceptions to the preferential transfer of payments fell upon the Defendants asserting those exceptions, I revisited the evidence presented at the original trial to determine whether the transfers represented by invoices with "unknown" delivery dates were addressed by the parties. The evidence indicates that these invoices actually represented *direct* shipments of goods to the debtor. The cross-examination of Mr. Frusciante, general manager of Seven D Wholesale in Scranton, explains the application of the direct shipment of goods and how they were used to calculate a setoff to the preferential transfers. Invoices dated between November 26, 1996 and February 4, 1997, and representing the direct shipments of goods to the Debtors, indicate the Defendant was invoiced from its suppliers for the goods directly shipped to the Debtor anywhere from three to ten days after receipt of goods by Debtor. (Transcript of 01/18/2000 at 101 (Doc. # 23A).) The Defendant would then invoice the Debtor the same day the Defendant received its invoice evidencing the direct shipment.

The Court re-examined Exhibit B attached to the Plaintiff's Supplement in support of the Motion for Reconsideration and determined, specifically, the Defendant did not meet its burden that the goods represented on invoice number 33995 dated 11–26–1996 in the amount of $3,993.60 were actually received by the Debtor during the preference period

therefore enabling that amount of the invoice to be offset against preferential transfer payments. In this regard, I will adjust my findings that the amount of the preferential payments which cannot be set-off by the presentation of new value by the Defendant during the preferential period now totals $48,685.35 (this amount represents the original amount determined by the Court not protected by the exception under § 547(c)(4) in the amount of $44,691.75 plus the amount represented by invoice number 33995 dated 11–26–1996 in the amount of $3,993.60.) Once again, neither party has challenged the findings of the post-petition avoidable transfers under § 549(a) in the amount of $14,834.98. With the adjustments made above, the judgment is now entered in favor of the Plaintiff in the amount of $63,520.33.

■ The next issue for resolution is whether the Plaintiff is entitled to interest on this amount. Other than an assertion by the Plaintiff that it is entitled to both pre-judgment and post-judgment interest, neither party provided any citation in either support or opposition to this request or the appropriate calculation of interest. In the case of *Kaufman v. Tredway,* 195 U.S. 271, 25 S.Ct. 33, 49 L.Ed. 190 (1904), the court, in reviewing a judgment entered in favor of a trustee for a sum certain together with interest resulting from preferential transfers, wrote that "[w]e see no reason to doubt the propriety of allowing interest on the claim from the commencement of the action. Such commencement is itself a demand." *Id.* at 273, 25 S.Ct. 33. I find that this conclusion should logically be extended to the case before me.

Furthermore, 28 U.S.C. § 1961(a) provides that interest shall be allowed on any money judgment in a civil case recovered in a district court. I hereby enter judgment in favor of the Plaintiff with interest allowed on that judgment pursuant to the dictates of 28 U.S.C. § 1961 from the date of the entry of the judgment. There is considerable support in case law finding that the pre-judgment interest should be at the same coupon yield rate set forth in 28 U.S.C. § 1961 quoted above. The Court finds that the applicable interest rate is that provided in 28 U.S.C. § 1961 for both pre-judgment and post-judgment interest. See *In re Southern Industrial Banking Corp.,* 87 B.R. 518 (Bankr. E.D.Tenn.1988); *In re Universal Foundry Co.,* 163 B.R. 528 (E.D.Wis.1993) *affirmed* 30 F.3d 137 (7th Cir.1994); *In re Investment Bankers Inc.,* 135 B.R. 659 (Bankr. D.Colo.1991) *affirmed* 161 B.R. 507 (D.Colo.1992) *affirmed* 4 F.3d 1556 (10th Cir.1993).

Finally, the Defendants have produced nothing in addition to the original evidence produced in the first trial in support of their claim that all of the transfers in question fall within the § 547(c)(2) exception and, therefore, this Court will not change or reconsider its original findings in this regard. The Defendants' Motion for Reconsideration is denied.